Dora W. **CRUNDWELL**, Appellant,

v.

Michael **BECKER**, M.D., and Richard Brown, M.D., Appellees.

No. 01–96–01453–CV

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 5, 1998.

Rehearing Overruled Jan. 11, 1999.

John H. Holloway, Houston, for appellant.

Sarah H. Hollenbeck, Jim Edwards, for appellees.

Before Justices COHEN, O'CONNOR, and ANDELL.

## OPINION ON REHEARING

ERIC ANDELL, Justice.

The motion for rehearing is denied. We withdraw our opinion of August 13, 1998, and issue this one in its stead.

Dora W. Crundwell sued Drs. Michael Becker and Richard Brown for medical malpractice. After the trial court granted Becker's motion for a directed verdict on the issue of informed consent, a jury found for Becker and Brown on the issue of negligence. The trial court rendered a take-nothing judgment against Crundwell. We affirm in part and reverse in part.

### Facts

When she was 64 years old, Dora Crundwell consulted Michael Becker, an obstetrician-gynecologist, concerning pelvic abdominal pain. Crundwell was diabetic, was experiencing vascular problems, and had undergone surgery 17 years before to correct diverticulitis, a bowel disorder. Crundwell testified Becker told her she had cancer, and she would not have agreed to the surgery otherwise. Becker denied telling Crundwell she had cancer. None of the tests indicated Crundwell had cancer, and all of the doctors agree she does not have cancer. The doctors also agreed that, had Becker told Crundwell she had cancer, it would have been both incorrect and unethical.

Crundwell signed an informed consent form that states the reason for the surgery was "pelvic abdominal pain." Becker performed a total hysterectomy, removing Crundwell's uterus and ovaries. There is some question as to whether a remnant of one ovary remains in Crundwell's body. Because of her previous surgery, Crundwell's bowel had numerous "adhesions," i.e., scar tissue that caused parts of the bowel to stick together. During the operation, Becker nicked part of the bowel. He asked Brown, a general surgeon, to repair the tear. Brown did so, removing a small section of bowel and attaching the ends together.

Crundwell claims she was still in pain and believed she had an infection when she left the hospital, although neither Becker's testimony nor the hospital records confirm this. Crundwell acknowledged she did not convey this information to anyone at the hospital. Two months after the hysterectomy, Crundwell went back into the hospital for vascular surgery to be performed by Dr. Demetrio Boulafendis. When Boulafendis began the surgery, he found sterile pus in Crundwell's abdominal cavity and small holes in her bowel. He repaired the holes, closed the incision, and delayed the vascular surgery to ensure Crundwell had no infection. He performed the surgery a week later without any problems.

Crundwell's expert, Dr. David Barnes, testified Becker was negligent in not attempting less radical treatment to control the pain, in performing the hysterectomy before the vascular surgery, and in leaving small tears in the bowel. Becker and his medical expert, Dr. Harold Miller, testified the operation was necessary and properly performed. Brown testified nicking the bowel was a common surgical hazard, and he successfully repaired the bowel. Becker, Brown, Miller, and Barnes testified that, had the tears been caused during the hysterectomy, Crundwell would have shown severe symptoms within days and would almost certainly have died. They also testified the tears could have been created by Boulafendis because of the many bowel adhesions; they described the pus as resulting from dissolved sutures; and they opined that Boulafendis had mistaken scar tissue for a remnant of ovary.

### Refused Issues

■ In points of error one, two, five, and eight, Crundwell argues the trial court erred in refusing to submit questions to the jury on the issues of fraud, constructive fraud, gross negligence, and intentional misrepresenta-

tion. She claims these causes were supported by her pleadings and evidence.

■ Becker argues a party cannot recover damages from fraud if the damages arise from an improperly performed contract. For support, he relies on *Formosa Plastics Corp. v. Presidio Engineers & Contractors*, 960 S.W.2d 41 (Tex.1998). However, *Formosa* does not so hold. In fact, the supreme court held in *Formosa* that tort damages *are* recoverable for a fraudulent inducement claim, even if the damages are the same as those recoverable under the breach of contract claim. *See id.* at 47.

Becker relies on *Gaut v. Quast*, 505 S.W.2d 367, 369 (Tex.Civ.App.—Houston [14th Dist.]), *writ ref'd n.r.e.*, 510 S.W.2d 90, 91 (Tex.1974), to argue Crundwell was not entitled to submit jury issues on fraud or misrepresentation independent of the issue of informed consent. *Gaut* does not support Becker's argument. In its per curiam opinion refusing writ, the supreme court disagreed with the Fourteenth Court's conclusion that submitting an issue on informed consent precludes submission of a fraud issue. *See* 510 S.W.2d at 91.

■ In *Melissinos v. Phamanivong*, 823 S.W.2d 339, 344 (Tex.App.—Texarkana 1991, writ denied), the Texarkana court of appeals held the trial court properly submitted both informed consent and fraud causes of action, because the definition of informed consent under article 4590i does not include misrepresentations. We hold the issue of fraud may be submitted to a jury in addition to, and independent of, the issue of informed consent.

■ Because the issue of informed consent does not encompass the issues of fraud or negligent misrepresentation, the next inquiry is whether Crundwell was entitled to the submission of fraud and negligent misrepresentation. When evidence raises an issue, it is reversible error for the trial court to refuse to submit it to the jury. *See Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977). A trial court may refuse to submit an issue only when there is no evidence to support the submission, not merely because the evidence is insufficient to support a judgment. *See Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex.1985); *Waldron v. Zapata Exploration Co.*, 878 S.W.2d 349, 350 (Tex.App.—Houston [1st Dist.] 1994, no writ).

Crundwell's testimony was more than a scintilla of evidence of fraud, constructive fraud, intentional misrepresentation, and gross negligence. We hold the trial court improperly refused to submit these issues to the jury.

We sustain points of error one, two, five, and eight.

### Directed Verdict

■ In points of error six and seven, Crundwell argues the trial court erred in rendering a directed verdict for Becker on the issue of informed consent. Even though Crundwell signed a surgical consent form, she argues the court should have submitted the issue of informed consent.[1] Crundwell's argument is that she was not the ordinary patient facing surgery; because of her compromised physical condition, Becker should have told her that she was more likely than most patients to suffer a tear or cut of the intestines. Crundwell relies on *Barclay v. Campbell*, 704 S.W.2d 8 (Tex.1986) to support her argument under this point. We disagree that *Barclay* supports Crundwell's argument.

In *Barclay*, the plaintiff did not sign a consent form, and it was undisputed that his doctor did not disclose one of the risks of a prescribed medication. *Id.* at 9. Crundwell signed a form consenting to abdominal surgery because of pelvic abdominal pain. The form shows a variety of possible procedures, depending upon what the doctors found during exploratory surgery, and a number of associated risks. One of the disclosed risks was the one about which she now complains—injury to the bowel.

Crundwell offered no evidence to show she was incapable of understanding the consent

---

1. If a patient signs a written consent to surgery that lists the risks of surgery, and the execution of the written consent is witnessed by a credible person, there is a "presumption" that the physician has obtained the patient's informed consent. *See* Tex.Rev.Civ. Stat. art. 4590i, §6.07 (1998).

form. The issue of whether she would have agreed to the surgery had she not believed she had cancer is distinct from the issue of whether she was fully informed of the risks attendant to having surgery. The trial court did not err when it granted Becker's motion for a directed verdict.

We overrule points of error six and seven.

In point of error four, Crundwell argues the trial court erred in rendering the directed verdict, to the extent rendition was based on the issues of intentional misrepresentation or fraud. Aside from the statement in the point of error, Crundwell does not argue the issue, refer to the record, or offer authority to support the point of error. The record shows Becker's motion addressed only the issue of informed consent, and the directed verdict was rendered solely on that issue. It was not based on fraud or intentional misrepresentation.

We overrule point of error four.

### Independent Cause

In point of error nine, Crundwell contends the trial court erred in overruling her objection to Becker's "new and independent cause" submission. She argues that the trial court should not have submitted the issue of "new and independent cause."

A judge may refuse to submit an issue only if there is no evidence to warrant submission. See Brown, 685 S.W.2d at 641;[2] The trial court did not abuse its discretion in submitting the issue over Crundwell's objection.

We overrule point of error nine.

### Broad–Form Submissions

In point of error three, Crundwell argues the trial court erred in refusing to submit questions regarding whether Becker falsely told her she had cancer and whether she suffered damages as a proximate cause of unnecessary surgery. In points of error 10 through 15, she contends the trial court erred in overruling her objection to broad-form submission on the issue of negligence

and in refusing to submit separate factual liability questions.

The trial court must, whenever feasible, submit a cause on broad-form questions. See Tex.R. Civ. P. 277; Texas Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex.1990). Only when there are extraordinary circumstances may the court use other submissions. E.B., 802 S.W.2d at 649. In Merckling v. Curtis, 911 S.W.2d 759, 771 (Tex.App.—Houston [1st Dist.] 1995, writ denied), this Court held that broad-form submission was proper in a complex medical negligence case in which several concepts of negligence and proximate cause were alleged. We hold the broad-form submission on the issue of negligence was proper in this case.

We overrule points of error three and 10 through 15.

### Motion for New Trial

In points of error 16 through 18, Crundwell contends the trial court abused its discretion in overruling her motion for new trial because the jury's findings that Becker and Brown were not negligent were so against the overwhelming great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Brown and Becker argue that this complaint was too vague in the motion for new trial to preserve the error, citing Ramey v. Collagen, 821 S.W.2d 208, 210–11 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("when viewed as a whole, the jury's verdict is against the great weight and preponderance of the evidence" not specific enough to preserve error). In Ramey, however, there were several jury findings. Here, there was only one. We hold error was preserved.

When we review factual sufficiency, we consider all of the evidence and will reverse only if the finding is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). Although the Texas Constitution gives the courts of appeals the authority to "unfind

---

2. Miller, Becker's expert, said the holes occurred during the surgery performed by Boulafendis.

facts," it does not give them authority to "find" facts. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986).

The evidence of negligence consisted of (1) Crundwell's testimony that she continued to experience pain after her surgery; (2) Barnes's expert testimony that it was negligent to perform a hysterectomy without first cleansing the bowel and performing a dilation and curettage (D & C), in light of Crundwell's previous bowel resections and pelvic abscesses; (3) Boulafendis's report of finding small tears in Crundwell's bowel and sterile pus in her abdomen; and (4) Becker's nick of her bowel, admitted by Becker and confirmed by Brown. Evidence refuting negligence consisted of: (1) Brown's testimony that surgical nicks of the bowel are common in abdominal surgery, and not necessarily evidence of negligence; (2) Miller's expert testimony agreeing that a surgical nick is not considered negligent, a D & C was not only unnecessary, but potentially dangerous, bowel cleansing was not routinely performed before a hysterectomy, and—had tears in the bowel remained after the surgery—Crundwell would have had elevated temperatures and been continuously, seriously sick, thus the tears occurred during Boulafendis's surgery; (3) post-surgical hospital notes showing normal temperatures and no indications of infection; and (4) Becker and Brown's testimony that neither was negligent.

Considering all the evidence, we overrule points of error 16 through 18. There was ample evidence in the record that, if believed, would support the jury's verdict. The verdict was not against the great weight and preponderance of the evidence, and the trial court did not abuse its discretion in overruling the motion for new trial on these grounds.

## Conclusion

The issues of fraud, intentional misrepresentation, and gross negligence apply only to Crundwell's claim that Becker told her she had cancer. Because we overruled the remaining points of error, we affirm the take-nothing judgment in regard to Brown.

We reverse and remand as to Becker.

Justice O'CONNOR dissenting.

MICHOL O'CONNOR, Justice, dissenting on rehearing.

I dissent. In addition to reversing in part on submitting issues to the jury, I would reverse in regard to the directed verdict on informed consent. Dora W. Crundwell sued Drs. Michael Becker and Richard Brown for medical malpractice. After the trial court granted Becker's motion for a directed verdict on the issue of informed consent, a jury found for Becker and Brown on the issue of negligence. The trial court rendered a take-nothing judgment against Crundwell.

## Informed Consent

In points of error six and seven, Crundwell argues the trial court erred in rendering a directed verdict for Becker on the issue of informed consent. Even though Crundwell signed a surgical consent form, she argues the court should have submitted the issue of informed consent. Crundwell's argument is that she was not the ordinary patient facing surgery. Because of her compromised physical condition, Becker should have told her that she was more likely than most patients to suffer a tear or cut of the intestines.

In Texas, a physician is liable for negligent failure to disclose the risks involved in the medical care if the risks or hazards could have influenced a reasonable person in making a decision to give or withhold consent. *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983); *Gibson v. Methodist Hosp.*, 822 S.W.2d 95, 100 (Tex.App.—Houston [1st Dist.] 1991, writ denied); Tex.Rev.Civ. Stat. Ann. art. 4590i, §§6.02, 6.05.

Informed consent, as it relates to a medical malpractice claim, is governed by the Medical Liability and Insurance Improvement Act. *Merckling v. Curtis*, 911 S.W.2d 759, 768 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *see* Tex.Rev.Civ. Stat. Ann. art. 4590i, §§6.02, 6.01–.08 (1997) (the Act). The Act created the Texas Medical Disclosure Panel to determine that risks and hazards must be disclosed to patients undergoing medical care and surgical procedures. The panel's responsibility is to evaluate all medi-

cal and surgical procedures, determine whether disclosure of risks is required, and if so, how much disclosure is required. Tex. Rev.Civ. Stat. art. 4590i, §6.04(a); *Peterson,* 652 S.W.2d at 931; *Merckling,* 911 S.W.2d at 769. Once evaluated, each procedure is placed on either List A or List B. List A procedures require some disclosure of the risks involved in the treatment; List B procedures do not require disclosure. Tex.Rev. Civ. Stat. art. 4590i, §6.04(b); *Merckling,* 911 S.W.2d at 769. If a procedure is not on either List A or List B, the doctor is under a duty to disclose all risks or hazards that could influence a reasonable person in making a decision to give or withhold consent to the procedure. *Peterson,* 652 S.W.2d at 931; *Merckling,* 911 S.W.2d at 769.

Proper disclosure of risks in medical procedures found on List A, or nondisclosure for medical procedures on List B, creates a rebuttable presumption the physician was not negligent. Tex.Rev.Civ. Stat. art. 4590i, §6.07; *Peterson,* 652 S.W.2d at 931. If a procedure is not on either list, the doctor is under the duty otherwise imposed by law. Tex.Rev.Civ. Stat. art. 4590i, §6.07(b). That duty is to disclose all risks and hazards that could influence a reasonable person in making his or her decision to consent to the procedure. *Peterson,* 652 S.W.2d at 931.

The Act provides that if a patient signs a written consent to surgery that lists the risks of surgery, and the execution of the written consent is witnessed by a credible person, there is a "rebuttable presumption" that the physician obtained the patient's informed consent. Tex.Rev.Civ. Stat. art. 4590i, §6.07. Thus, because Crundwell signed a consent form, we begin with the presumption she gave her informed consent to the surgery. The issue is whether Crundwell's evidence rebutted the presumption of consent.

In *Peterson,* 652 S.W.2d at 931, the supreme court held that section 6.02 of the Act requires the doctor "to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." The "reasonable person" standard under section 6.02 requires the doctor to provide information about the risks that are material to the decision to give or

withhold consent to a particular medical procedure. *Id.*

According to *Peterson,* the plaintiff must meet two requirements to raise a fact issue. *Peterson,* 652 S.W.2d at 931; *Barclay v. Campbell,* 704 S.W.2d 8, 9 (Tex.1986). First, the plaintiff must introduce evidence to show the risk is inherent to the medical procedure undertaken. *Barclay,* 704 S.W.2d at 9. Second, the plaintiff must introduce evidence to show the risk is material in the sense that it could influence a reasonable person's decision to consent to the procedure. *Id.* at 9–10. If the plaintiff meets both of these requirements, a fact issue is raised so that the plaintiff is entitled to the submission of two issues. *Id.* at 10.

Because the court directed a verdict against Crundwell on the issue of informed consent, the Court must reverse on that issue if Crundwell produced evidence that raised a fact issue regarding risks about which she should have been informed. *Id.* at 9; *Peterson,* 652 S.W.2d at 931.

Crundwell introduced more than sufficient evidence to raise a fact issue on the two elements outlined in *Barclay.* She introduced evidence of an expert who testified that, because of Crundwell's earlier surgeries, there was a "high probability that she might suffer a bowel perforation," and if she did, this injury might require "multiple surgeries, that she might get peritonitis, that she might require a colostomy again, or that she might die as a result of complications from surgical injury." Crundwell testified that Dr. Becker did not tell her about any risks, complications, or hazards to her health if he performed the surgery to remove her uterus, fallopian tubes, and ovaries.

On this record, Crundwell raised a fact issue about informed consent, and the trial court should not have directed a verdict against her on this issue.

I would sustain points of error six and seven.